IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAWA, INC., a corporation of the State of New Jersey, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 04-322-KAJ |
| THE GOVERNMENT OF NEW CASTLE COUNTY, DELAWARE, a political subdivision of the State of Delaware, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF WAWA, INC.'S REPLY BRIEF
IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Edward M. McNally (#614)
Matthew F. Lintner (#4371)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899
(302) 888-6800
Attorneys for Plaintiff Wawa, Inc.

Dated: March 28, 2005

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................1

ARGUMENT.................................................................................................................................3

    I.      GRANDFATHERING EXISTING TANKS IRRATIONALLY HINDERS THE CENTRAL GOAL OF THE ORDINANCE:  THE PROTECTION OF HEALTH AND SAFETY..........................................................3

          A.      The Present Challenge is a Means-Focused Challenge ....................3

          B.      The Goal of UDC Division 40.10.600 is the Protection of Health and Safety ........................................................5

          C.      It is Irrational to Allow the Subsidiary Interest Of Protecting Existing UST Owner Expectations to Undermine the Health and Safety Goal of the Ordinance ................7

    II.     THE COUNTY'S FAILURE TO APPRECIATE THE RISKS THE ORDINANCE CREATES DOES NOT RENDER THE ORDINANCE RATIONAL..........................................................................10

          A.      The County has Impaired the Ability of UST Operators to Continue Safe Operation..........................................10

          B.      The County's Nonconforming Use Guidelines Fail to Ensure that the Protected Status will not be Permanent .................12

CONCLUSION............................................................................................................................15

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                      <u>Page</u>

*City of Wilmington v. Conner,*
    298 A.2d 771 (Del. 1972) ..................................................................................8

*Congregation Kol Ami v. Abington Township,*
    309 F.3d 120 (3d Cir. 2002)................................................................................3

*Consumers Gasoline Stations v. City of Pulaski,*
    292 S.W.2d 735 (Tenn. 1956)............................................................................5

*Davidson v. City of Clinton, Miss.,*
    826 F.2d 1430 (5th Cir. 1987) ...........................................................................8

*Delaware River Basin Comm'n v. Bucks County Water & Sewer Auth.,*
    641 F.2d 1087 (3d Cir. 1981)............................................................................13

*Drake v. Town of Sanford,*
    643 A.2d 367 (Me. 1994) .............................................................................11, 12

*Fliptop, Ltd. v. Government of New Castle County,*
    1983 WL 473056 (Del. Super. Ct. Sept. 30, 1983)............................................9

*Heller v. Doe,*
    509 U.S. 312 (1993)...........................................................................................3

*Ingersoll v. Rollins Broadcasting of Del., Inc.,*
    269 A.2d 217 (Del. 1970) ..................................................................................9

*In re Martin,*
    504 P.2d 14 (Nev. 1972)....................................................................................6

*Meramec Specialty Co. v. City of Southaven, MS,*
    2000 WL 33907912 (N.D. Miss. Feb. 22, 2000) ...............................................8

*Minnesota v. Clover Leaf Creamery Co.,*
    449 U.S. 456 (1981)...........................................................................................4

*Romer v. Evans,*
    517 U.S. 620 (1996)...........................................................................................4

*Sampere v. City of New Orleans,*
    117 So. 827 (La. 1928) ......................................................................................7

*Schweiker v. Wilson*,
    450 U.S. 221 (1981)..................................................................................................4

*Standard Oil Co. v. City of Gadsden*,
    263 F. Supp. 502 (N.D. Ala. 1967)............................................................................5

*Standard Oil Co. of New Jersey v. City of Charlottesville*,
    42 F.2d 88 (4th Cir. 1930) ......................................................................................5, 6

*Tolchin v. Supreme Court of the State of New Jersey*,
    111 F.3d 1099 (3d Cir. 1997)....................................................................................4

*Zahn v. Board of Public Works*,
    234 P. 388 (Ca. 1925) ...............................................................................................7

<u>Statutes and Other Authorities</u>

9 *Del. C.* § 1101 ..................................................................................................................8

9 *Del. C.* § 2610 ..............................................................................................................7, 8

9 Code of Delaware Regulations 70 100 105, Part B § 4.01 D(2).........................11, 13

UDC Division 40.10.600 ........................................................................................ *passim*

UDC Section 40.08.020 .....................................................................................................7

## INTRODUCTION

Under rational-basis review, Unified Development Code ("UDC") Division 40.10.600 cannot survive. An absolute ban on underground storage tanks ("USTs") in a Water Resource Protection Area ("WRPA") would undoubtedly protect the WRPAs and the health and safety of the community. However, after deciding it was dangerous to the water supply and the health and safety of the community for USTs to exist in WRPAs, the County chose to exempt USTs already in existence, while at the same time limiting the ability of operators of these pre-existing tanks to modernize or upgrade them. The structure of the ordinance incentivizes the operators of the pre-existing tanks to operate the tanks past their useful lives, inevitably increasing the risk of leaks. As is set forth in Wawa, Inc's ("Wawa") opening brief,[1] the County has irrationally increased the risk of future leaks in a misguided effort to reduce such leaks. The County admits the scenarios set forth in Wawa's opening brief are plausible (AB at 14); common sense indicates they are probable.

The County defends its ordinance by characterizing it as a commonplace recognition of the rights of nonconforming uses to continue, and even asserts it had little choice but to allow the pre-existing uses to continue. The County disregards extensive authority indicating that it was improper to exempt existing tanks, by asserting those cases address "safety" concerns, not "zoning" concerns. But this ordinance was aimed at public safety, and its codification within the zoning provisions of the County Code does

---

[1] Plaintiff Wawa Inc.'s Opening Brief in Support of Motion for Summary Judgment (D.I. 24) shall be cited to herein as "OB." Defendant Government of New Castle County's Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment (D.I. 29) shall be cited to herein as "AB." The Joint Appendix for the motion (D.I. 25) shall be cited to herein as "JA."

1

not change that fact. Both at the time of passage of the ordinance and in its answering brief, the County refuses to acknowledge the unnecessary risks to groundwater that it has engendered through the structure of this ordinance. That refusal does not eliminate the risks.

      The County's goal in enacting this ordinance was laudable: the protection of the health and safety of the citizens of New Castle County. The means it has selected to achieve that goal are irrationally undermining the goal itself. The County's failure to fashion a rational mechanism to meet its laudable goal has rendered its ordinance void. The Constitution does not tolerate discrimination among similarly-situated persons where the discrimination is not in the service of a rational means to the accomplishment of the legitimate governmental ends.

## ARGUMENT

I. **GRANDFATHERING EXISTING TANKS IRRATIONALLY HINDERS THE CENTRAL GOAL OF THE ORDINANCE: THE PROTECTION OF HEALTH AND SAFETY**

### A. The Present Challenge is a Means-Focused Challenge

When a plaintiff brings an equal protection challenge against a land use ordinance, the Third Circuit has found that the ordinance will not survive if it does not bear a rational relationship to a legitimate governmental interest. *Congregation Kol Ami v. Abington Township*, 309 F.3d 120, 133 (3d Cir. 2002). "Land use ordinances will be deemed 'irrational' when a plaintiff demonstrates *either* that the state interest is illegitimate (an ends-focus) *or* that the chosen classification is not rationally related to the interest (a means-focus)." *Id.* Admittedly, an ends-focused challenge to an ordinance is difficult because it will be upheld if there is any conceivable legitimate governmental purpose for the ordinance. *See Heller v. Doe*, 509 U.S. 312, 319-320 (1993). However, Wawa's challenge is not an ends-focused challenge; Wawa brings a means-focused challenge.

Both parties to this action agree that "[t]he County's purpose in enacting UDC Division 40.10.600.A was to protect the County's water resources and ensure a safe supply of public water for the health and safety of the community." (JA 6, ¶ 13.) Moreover, both parties agree that protecting the County's water for the health and safety of the community is a legitimate purpose. (*Id.*) The only question in this case is whether the discrimination encompassed in UDC Division 40.10.600 is rationally related to "protect[ing] the County's water resources and ensur[ing] a safe supply of public water

3

for the health and safety of the community." If the means are not rationally related to the ends, the law is unconstitutional.

When addressing a means-focused challenge, a court will find that a classification is rationally related to a legitimate purpose so long as "the classificatory scheme chosen by [the legislative body] rationally *advances* a reasonable and identifiable governmental objective...." *Schweiker v. Wilson*, 450 U.S. 221, 235 (1981) (emphasis supplied); *see also Romer v. Evans*, 517 U.S. 620, 632 (1996) ("In the ordinary case, a law will be sustained if it can be said to *advance* a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.") (emphasis supplied). Both the Supreme Court and the Third Circuit have found that when determining whether the means advance the ends, the legislature does not have to use the best or least restrictive means. However, the Equal Protection Clause is only satisfied if the legislative body "'could rationally have decided' that its action would *further its goal*...." *Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1114 (3d Cir. 1997) (emphasis supplied) (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981)).

The County cannot meet this means-focused standard, because it could not have rationally believed that leaving the USTs in the ground in a manner that would countenance, even encourage, the operation of aging and increasingly dangerous tanks furthered its admittedly legitimate governmental purpose. Indeed, allowing aging USTs to remain in the ground in the manner enacted by the County actually detracts from, rather than advances, the County's legitimate interests in protecting the water supply and the health and safety of the community. This was not rational.

### B.  The Goal of UDC Division 40.10.600 is the Protection of Health and Safety

UDC Division 40.10.600 must fail because it is not rationally related to the legitimate governmental interest of "protect[ing] the County's water resources and ensur[ing] a safe supply of public water for the health and safety of the community." (JA 6, ¶ 13.) In its opening brief, Wawa set forth a series of cases from a variety of jurisdictions concluding that grandfathering USTs from a ban on USTs violates the Equal Protection Clause, because such grandfathering irrationally undermines the safety goal of the ordinance. *See, e.g., Standard Oil Co. v. City of Gadsden*, 263 F. Supp. 502, 506-08 (N.D. Ala. 1967); *Consumers Gasoline Stations v. City of Pulaski*, 292 S.W.2d 735, 737 (Tenn. 1956); *Standard Oil Co. of New Jersey v. City of Charlottesville*, 42 F.2d 88, 93 (4th Cir. 1930); *see also* OB at 17 (citing cases).

The County attempts to distinguish this line of authority by asserting that the statutes in these cases were meant to protect the <u>safety</u> of the community, and by suggesting that such safety regulations are fundamentally different from the zoning regulations at issue in the instant case.

Wawa freely concedes that the cases finding that exemptions from UST bans violate the Equal Protection Clause all dealt with safety regulations. However, so does the instant case. This is not a situation where the County passed a classic, garden-variety zoning ordinance to protect the aesthetic charm of a community or to prevent the noise and traffic of an industrial park from invading a residential neighborhood. To the contrary, as the County has stipulated, the ban on USTs was meant to "protect the County's water resources and ensure a safe supply of public water for the *health and safety* of the community." (JA 6, ¶ 13 (emphasis supplied).) By the County's own

5

admission, the ban on USTs is a safety regulation. Consequently, as the Fourth Circuit has instructed:

> It cannot be said that an ordinance, the purpose of which is the safeguarding of the public in the handling of a dangerous commodity, makes a classification having a fair and substantial relation to its object, where it exempts from its operation established businesses, and applies restrictions only to businesses to be established in the future.... The fact that one is already engaged in a dangerous business manifestly does not put him in a class which can be favored by the state in legislation regulating such business.

*City of Charlottesville*, 42 F.2d at 93.

Because UDC Division 40.10.600 is a regulation aimed at the protection of health and safety, it matters little that it is housed in the volume of the County's code that deals with zoning. Further, it matters little that the ordinance has the effect of prohibiting UST installation in designated areas of the County. Other UST ordinances which have been ruled unconstitutional had similar "zoning" aspects, such as *In re Martin*, 504 P.2d 14, 15-16 (Nev. 1972), which found a local ordinance unconstitutional because it regulated the manner of filling USTs in some parts of a city, but not in other parts. Likewise, in *City of Charlottesville*, 42 F.2d at 90, the ordinance under consideration limited the storage of gasoline in designated sections of the City known as "fire limits" or "congested fire limits."[2]

---

[2] The language of the *City of Charlottesville* ordinance read:

> Be it ordained by the council of the City of Charlottesville that it shall be unlawful within the area of Charlottesville known as fire limits and congested fire limits of the City of Charlottesville as described in existing ordinances, to store for sale, keep for sale, or sell upon any lot within 100 feet of any building used solely for residence purposes, dynamite, kerosene, gasoline or naptha. This ordinance shall not be applied to building in or lots upon which tanks are now installed.

*City of Charlottesville*, 42 F.2d at 90.

6

The relevant inquiry is not where the ordinance is codified, the relevant inquiry is whether the public health and safety goals of the ordinance are being met in a rational manner. The County's contention that it is entitled to particular deference because the UDC is a "zoning" provision asks the Court to ignore the public health and safety concerns which lie at the heart of the ordinance.

Significantly, none of the cases the County cites for the general proposition that nonconforming use provisions do not violate the Equal Protection Clause (AB at 22), involved matters of public safety, as is the case here. *See Sampere v. City of New Orleans*, 117 So. 827, 827 (La. 1928) (considering generalized ban on the operation of businesses in a certain area); *Zahn v. Board of Public Works*, 234 P. 388, 390 (Ca. 1925) (addressing ordinance banning businesses from being built in an area zoned for dwellings, hotels, and tenements).

C. **It is Irrational to Allow the Subsidiary Interest of Protecting Existing UST Owner Expectations to Undermine the Health and Safety Goal of the Ordinance**

The County justifies its decision to allow existing tanks to remain in place based upon a generalized interest in protecting the expectations of the existing UST owners, and on the well-established principle that nonconforming uses should be allowed to continue. This principle stems from case law (AB at 22), from the New Castle County Code (UDC Section 40.08.020), and from State law, 9 *Del. C.* § 2610.

It was reasonable for the County to attempt to craft its ordinance in a manner which would be cognizant of the reasonable expectations of existing tank owners. It was not reasonable, however, for the County to allow the interests of existing tank owners to undermine the very purpose of the ordinance itself. The authority of the County to

address and resolve the problem of gasoline sales within WRPAs was surely not so constrained that the County could only have addressed the problem through an ordinance that brings with it significant risks of releases of petroleum.

State law does indeed require that counties in Delaware recognize legitimate vested rights when engaging in zoning, stating that "the lawful use of a building or structure, or the lawful use of any land" may be continued. 9 *Del. C.* § 2610. It is not at all clear, however, that this statute or any other restriction on the County's authority required the County to allow continued gasoline sales within a WRPA, if banning such sales would have protected the health and safety of the community. In similar situations, when localities ban, through the use of their zoning powers, sales of commodities considered unsafe or inappropriate, courts have rejected landowner claims to any vested right to continue the banned sales. *See Davidson v. City of Clinton, Miss.*, 826 F.2d 1430, 1434-35 (5th Cir. 1987) (finding no vested right to continue, as a nonconforming use, sales of alcohol in violation of a zoning ordinance that prohibited the sale of alcohol within a certain distance of churches and schools); *Meramec Specialty Co. v. City of Southaven, MS*, 2000 WL 33907912, at *1 (N.D. Miss. Feb. 22, 2000) (finding that nonconforming use doctrine did not allow continuation of fireworks sales after such sales were banned by zoning ordinance).

As with the municipalities in the above-cited cases, the County has general police powers broad enough to protect the health and safety of the community. The County generally has "all powers which, under the Constitution of this State, it would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute . . . ." 9 *Del. C.* § 1101; *see also City of Wilmington v. Conner*, 298

8

A.2d 771, 773 (Del. 1972) (finding County has broad powers); *Ingersoll v. Rollins Broadcasting of Del., Inc.*, 269 A.2d 217, 219 (Del. 1970) (finding legislature delegated broad powers to the County); *Fliptop, Ltd. v. Government of New Castle County*, 1983 WL 473056, at *1 (Del. Super. Ct. Sept. 30, 1983) (referring to County's power to demolish structures that endanger the public safety as a "recognized police power"). The owner/operators of existing gasoline stations within WRPAs surely could have expected to continue to use their parcels for commercial use, but the County need not have recognized a vested right to continue sales of a commodity considered by the County to be hazardous when located within a WRPA. (*See* JA 6 at ¶ 13: "the County determined that underground petroleum tanks present a threat to water resources when located within a WRPA because of the risk of releases of petroleum.")

Further, even if New Castle County really was legally restricted in its ability to control the sales of unsafe commodities within its jurisdiction, it was still incumbent upon the County to navigate through the bounds of its authority and address the ongoing problem (risks of petroleum releases to groundwater) in a manner which would not result in unjustifiable and irrational discrimination. Here the County has failed to do so, and the County's decision to leave existing tanks in place, but with limited rights to upgrade and maintain such tanks, threatens to undermine the central goal of the ordinance: protecting health and safety.

The reasons this is so are set forth in Wawa's opening brief. The ordinance the County has put in place has created an incentive for the current operators to operate their tanks well past their useful lives, significantly increasing the risk of leaks from these tanks. Accommodating the interests and expectations of pre-existing tank operators in a

9

fashion which fundamentally undermines the very purpose of the ordinance does not justify discrimination: it renders the discrimination irrational. More is expected of local governments when public safety is at stake.

## II. THE COUNTY'S FAILURE TO APPRECIATE THE RISKS THE ORDINANCE CREATES DOES NOT RENDER THE ORDINANCE RATIONAL

The County seems blind to the peril it has imposed upon WRPAs through its ordinance. It is confident that the thirty-eight operators will forfeit their protected status in an orderly and timely manner. The County's confidence in the workability of its ordinance is misplaced. It has handicapped the ability of the current operators to operate safely, and provided a path for the unethical operators to continue their protected status forever.

### A. The County has Impaired the Ability of UST Operators to Continue Safe Operation

The County understands that operators with an aging tank in the ground face something of a quandry. Should that operator continue its use, with an ever-increasing risk of leaks, or should it cease operations? The County suggests that as the warranty on a tank expires, it may become difficult for an operator to secure insurance, and this will facilitate the "business decision" of the individual operators to discontinue the nonconforming use or face the consequences of a leak, including fines and remediation. (AB at 17.) The County places its faith in the good judgment of these operators, but at the same time tempts them to operate in a manner which increases the risk of leaks. UDC Division 40.10.600 actually makes it *unlawful* for existing operators of USTs within WRPAs to upgrade their tanks unless they are ordered to do so by DNREC. Rather than allowing or requiring owners of pre-existing USTs to be upgraded to the latest

10

technology, the County is content to let aging, deteriorating tanks remain in the ground until the end of and past their useful lives. The only circumstance which would prevent the slow and inevitable deterioration of the tanks would be a new universal DNREC upgrade requirement, which last happened a decade ago, s*ee* 9 Code of Delaware Regulations 70 100 105, at 105-175 (effective date for current regulations of March 12, 1995), or a site-specific corrective action order from DNREC to repair and upgrade a currently-leaking tank, *see* 9 Code of Delaware Regulations 70 100 105, Part B § 4.01 D(2).

This limitation on the ability of the on-site operator to make the judgment about the need to upgrade its tanks raises the question: what will happen when those tanks reach the end of their useful lives and there is no new universally-applicable DNREC regulation requiring an upgrade? According to the County's optimistic analysis, the County expects all thirty-eight gas stations to voluntarily give up their business (and possibly their livelihoods) *before* the tanks become dangerous. (AB at 18.)

The inappropriate and irrational incentive structure the County has established is highlighted by comparison with *Drake v. Town of Sanford*, 643 A.2d 367 (Me. 1994), a case the County invokes to support its ordinance. The County here has deprived the owner or operator of a pre-existing tank from making any judgments about whether a replacement is warranted. Under the County's ordinance, a decision to replace a tank must be made, if at all, by officials at DNREC, if and when they require a universal upgrade requirement. The on-site operator is utterly prevented from making such a judgment. In *Drake*, by contrast, a Shoreland Zoning Ordinance (SZO) prohibited the installation of new sewage systems, but allowed pre-existing sewage systems to be

11

upgraded as needed. 643 A.2d at 369-70. Under the SZO at issue in *Drake*, the owner of the nonconforming use, the person with the most knowledge of the status and integrity of the nonconforming tank, was allowed to make a determination as to whether modernization was necessary. *Id.* at 370.

Just as the local government in *Drake* rationally ensured that a nonconforming use will continue to operate safely, the County here has irrationally increased the risk of unsafe operation. The County has done just the opposite of what was found reasonable in *Drake*, by taking out of the hands of the on-site individual gas station owner the right to determine the need for an upgrade to its tanks. *Compare Drake*, 643 A.2d at 370 ("It is nevertheless rational to allow an owner to replace a leaking system with one which is less likely to leak.").

### B. The County's Nonconforming Use Guidelines Fail to Ensure that the Protected Status will not be Permanent

The County argues that Wawa's concern about the risk of a permanent grant of protected status is misplaced, as the normal implementation of the County's nonconforming use guidelines will eliminate any nonconformities with time. Again, the County does not appear to fully appreciate the inappropriate incentive structure it has provided through its ordinance, and the risks that this inappropriate incentive structure creates. The County's refusal to acknowledge these risks does not eliminate them, or make the County's legislative choices rational.

Under the ordinance, an operator within a WRPA is powerless to upgrade its UST, unless an upgrade is required by DNREC. The relevant portion of the UDC provides:

12

> The replacement of existing underground petroleum storage tanks in any area other than a Water Resource Protection Area (WRPA) shall be permitted provided all State and Federal regulations are met. *The replacement of existing underground petroleum storage tanks in a Water Resource Protection Area (WRPA) where an upgrade is required by DNREC shall be permitted provided all State and Federal regulations are met and secondary containment is provided.*

UDC Division 40.10.600.B (emphasis supplied).

As indicated in Wawa's opening brief, there is no particular reason to believe that a universal upgrade requirement is going to be required by DNREC on a timetable that would enable the existing operators to get their aging tanks replaced by tanks less likely to corrode away. An operator does have another strategy, however, one not addressed by the County. When facing decisions about whether its aging tanks should be pulled, the unethical tank operator is going to be tempted to run the risks associated with allowing the tanks to continue in operation until they leak. Although there clearly are costs associated with the inevitable leak, the County has inadvertently provided a significant benefit as well: if they do operate the tank too long, and a leak occurs, DNREC would then require that the damaged component be "repaired, replaced or upgraded."[3] This operator can then get a brand new tank in the ground and continue its protected status, and thus create the exact type of permanency problem that so concerned the Third Circuit in *Delaware River Basin Comm'n v. Bucks County Water & Sewer Auth.*, 641 F.2d 1087, 1098-99 (3d Cir. 1981). The County's refusal to acknowledge this hazard does not

---

[3] Once a UST leaks, DNREC can require corrective action, and the replacement of the failed component pursuant to 9 Code of Delaware Regulations 70 100 105, Part B § 4.01 D(2):

> The component of the underground storage tank system, whose failure caused the release of the regulated substance, must be promptly identified through tightness testing or other means approved by the Department and either repaired, replaced or upgraded by the responsible party.

13

eliminate it, and the potential grant of permanent and discriminatory protective status is an irrational means for the County to have adopted in serving its laudable goals.

## CONCLUSION

For the foregoing reasons, Plaintiff Wawa, Inc. requests that the Court grant its Motion for Summary Judgment; declare UDC Division 40.10.600 invalid because it denies Wawa, Inc. the equal protection of the law; and enjoin the Government of New Castle County from enforcing the provision of UDC Division 40.10.600.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

*/s/ Matthew F. Lintner*
_____
Edward M. McNally (#614)
Matthew F. Lintner (#4371)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899
(302) 888-6800
Attorneys for Plaintiff Wawa, Inc.

Dated: March 28, 2005

1098202/4

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAWA, INC., a corporation of the State of New Jersey,<br><br>    Plaintiff,<br><br>    v.<br><br>THE GOVERNMENT OF NEW CASTLE COUNTY, DELAWARE, a political subdivision of the State of Delaware,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 04-322-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF ELECTRONIC SERVICE

I, MATTHEW F. LINTNER, hereby certify that on March 28, 2005, I caused two copies of (1) **Plaintiff Wawa, Inc.'s Reply Brief in Support of Motion for Summary Judgment**, (2) **Compendium of Unreported Cases Cited in Plaintiff Wawa, Inc.'s Reply Brief in Support of Motion for Summary Judgment** and (3) **this Certificate of Service** to be served upon the following counsel of record in the manner indicated:

### VIA U.S. FIRST CLASS MAIL

    Mary A. Jacobson, Esquire
    Brian J. Merritt, Esquire
    New Castle County Law Department
    87 Reads Way
    New Castle, DE 19720

                                                        /s/ Matthew F. Lintner
                                                        Matthew F. Lintner (#4371)

1102709