IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WAWA, INC., a corporation of the State )
of New Jersey, )
                      )
                 Plaintiff, )
                      )
      v. )         Civil Action No. 04-322-KAJ
                      )
THE GOVERNMENT OF NEW CASTLE )
COUNTY DELAWARE, a political )
subdivision of the State of Delaware, )
                      )
               Defendant. )

**MEMORANDUM OPINION**

_____

Edward M. McNally, Esq., Matthew F. Lintner, Esq., Morris, James, Hitchens & Williams LLP, 222 Delaware Avenue, 10th Floor, Wilmington, Delaware 19801; Counsel for Plaintiff.

Mary A. Jacobson, Esq., Brian J. Merritt, Esq., New Castle County Law, 87 Reads Way, New Castle, Delaware 19720; Counsel for Defendant.

_____

October 13, 2005
Wilmington, Delaware



JORDAN, District Judge

## I.   INTRODUCTION

Plaintiff, Wawa, Inc. ("Wawa"), brought this suit, under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, for declaratory and injunctive relief against defendant, the Government of New Castle County, Delaware (the "County"), claiming that a County ordinance violates the Equal Protection Clause of the U.S. Constitution.   Before me are cross-motions for summary judgment under Fed. R. Civ. P. 56(c).   (Docket Items ["D.I."] 23; D.I. 26.)  The court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331; jurisdiction over the parties and venue are uncontested.  For the reasons that follow, I will grant summary judgment for the County.

## II.   BACKGROUND[1]

Wawa, a New Jersey corporation, owns and operates a chain of convenience stores, including 40 stores in Delaware, of which 23 are in New Castle County.  A subset of Wawa's stores, including seven of its New Castle County stores, also sell gasoline.

The County is a political subdivision of the State of Delaware and has a broad statutory grant to perform a number of designated local services, including the following:  planning and zoning; adoption and enforcement of ordinances and regulations for the protection of persons and property from hazards in the use, occupancy, condition, alteration, maintenance, repair, sanitation, removal and demolition of buildings and structures; and the maintenance and operation of a water

---

[1]The following background information is taken from the Joint Stipulation of Facts (D.I. 25) agreed to by the parties for purposes of this litigation.

supply system.  9 *Del. Code* § 1102.  The County has adopted a zoning code pursuant to Delaware statute.  9 *Del. Code* § 2601.

In 1988, consistent with its zoning authority, the County reviewed its "Comprehensive Plan."  (*See* D.I. 25 at ¶¶ 3-4.)  As part of the process of updating the Comprehensive Plan, the County formed a natural resource committee.  (*Id.* at ¶ 4.)  The committee analyzed the implications of ground and surface water resources for public health, safety, welfare, aesthetics, and the viability of continued economic development.  (*Id.*)  The committee found that public water supplies depend on good quality and availability from both surface and groundwater resources, and that these resources are vulnerable to pollution from several sources, including hazardous materials.  (*Id.*)  Specifically, the committee noted that gasoline and fuel oil leaks from underground storage tanks ("USTs") have caused pollution of surface and groundwater.  (*Id.*)  "Since 1988, the Comprehensive Plan Updates have identified the legitimate government interest in protecting these water resources."  (*Id.* at ¶ 5.)

On September 23, 1991, the County Council adopted Substitute No. 3 to Ordinance No. 90-289 with Amendment No. 1 and Oral Amendment No. 1, thereby creating Water Resource Protection Areas ("WRPAs").  (*Id.* at ¶ 6.)  The ordinance restricted the development and use of land within the WRPAs.  In particular, Section 23-134 of the ordinance prohibited underground storage of petroleum products in certain WRPAs and placed strict restrictions on such storage in all other WRPAs.  (*Id.*)  On January 24, 1994, the County Council adopted Ordinance 93-170 to more precisely

define the WRPAs and create additional restrictions on uses permitted in the WRPAs. (*Id.* at ¶ 7.)

On December 31, 1997, the County enacted the Unified Development Code ("UDC"), which significantly revised the zoning ordinances. (*Id.* at ¶ 8.) This version of the UDC prohibited the storage of petroleum products in a subset of the WRPAs and required an environmental impact assessment before permitting storage in other WRPAs. (*Id.*) On September 22, 1998, the County amended the UDC and the prohibition on storage was extended to cover certain additional WRPAs. (*Id.* at ¶ 9.)

Of significance for this case, the 1998 amendment also added a new provision that allowed existing petroleum USTs in WRPAs to be replaced when required by the State of Delaware's Department of Natural Resources and Environmental Control ("DNREC"), as long as the upgrade met the requirements of all applicable state and federal regulations. (*Id.*) This provision was drafted by the County to ensure that existing USTs would continue to comply with DNREC universal upgrade requirements, which may periodically be amended. (*Id.* at ¶ 10.)

On December 14, 1999, the UDC was further amended to include the provisions at issue here. (*Id.* at ¶ 11.) The 1999 amendment changed Division 40.10.600 of the UDC to read:

> The storage, maintenance, use, or sale of substances listed in 40 CFR 116 in an aggregate quantity equal to or greater than the reportable quantity as defined in 40 CFR 117 shall be governed by the following provisions. Petroleum products shall also meet the requirements of this section.
>
> A.    All such activities are prohibited in floodplains, floodways, wellhead class A, B, or C, the Cockeysville Formation, drainageways,

> recharge areas, steep slopes, critical natural areas, wetlands, riparian buffers and sinkholes, unless such substances are used in the process of public water supply and treatment and sewer facilities.
>
> B.    The replacement of existing underground petroleum storage tanks in any area other than a Water Resource Protection Area (WRPA) shall be permitted provided all state and federal regulations are met.  The replacement of existing underground petroleum storage tanks in a Water Resource Protection Area where an upgrade is required by DNREC shall be permitted provided all state and federal regulations are met and secondary containment is provided.
>
> ... .

(*Id.*)

Under Division 40.10.600.A, no new petroleum USTs may be installed in WRPAs. (*Id.* at ¶ 12.)  The parties agree that the County enacted this provision for the legitimate governmental purpose of protecting the County's water resources and ensuring a safe supply of public water for the health and safety of the community.  (*Id.* at ¶ 13.)  The County determined that USTs containing petroleum presented a risk of petroleum leaks, which threatened groundwater resources within the WRPAs.  (*Id.*) The County depends on groundwater to meet the drinking water needs of its citizens. (*Id.*)  With Division 40.10.600.A, the County sought to prevent the introduction of additional USTs into the WRPAs, because each additional UST adds an incremental risk of petroleum release into the groundwater.  (*Id.*)  Division 40.10.600.B continued to allow existing USTs in WRPAs to be replaced when required by the DNREC.  (*Id.* at ¶ 11.)

Approximately 38 gas stations with one or more USTs were located within WRPAs when the County enacted Division 40.10.600.A of the UDC.  (*Id.* at ¶ 15.)  The

County considers these existing USTs to be nonconforming uses under Delaware statute, 9 *Del. Code* § 2610.  (D.I. 25, ¶ 14.)  All of the USTs currently within WRPAs, and the related components, such as underground piping, are engineered to resist corrosion and leaks, and such equipment is typically both designed and warranted to resist corrosion for a lengthy period, such as 30 years.  (*Id.* at ¶ 17.)  If a UST remains underground longer than this period, the warranty expires and the risk of leaks increases.  (*Id.*)

Since 1990, Wawa has operated a convenience store located on South DuPont Parkway, in New Castle Hundred, within New Castle County (the "Site").  (*Id.* at ¶ 19.) This convenience store does not currently sell gasoline, but, prior to 1990, the Site was occupied by a gas station.  (*Id.*)  In 1989, DNREC investigated the site and discovered leaking USTs.  (*Id.*)  Under a DNREC order, seven gasoline USTs and one diesel UST were removed from the Site.  (*Id.*)  After this, the current Wawa convenience store was constructed.  (*Id.*)

On May 15, 2002, Wawa sought permission from the County to install petroleum USTs at the Site so that gasoline could be sold there.  (*Id.* at ¶ 20.)  The Site is within a WRPA, and the County's Department of Land Use determined that Division 40.10.600.A prohibited the installation of USTs at the Site.  (*Id.*)  Wawa then sought a variance from the 40.10.600.A restrictions, arguing that it intended to use extraordinary measures, including tertiary containment, to prevent , detect, and contain leaks.  (*Id.* at ¶¶ 22, 24, 25.)  These measures would be more protective against petroleum release than those required under current DNREC regulations.  (*Id.* at ¶ 25.)

Despite Wawa's assurances, the County Board of Adjustment denied the request on March 11, 2004, stating that "[t]he UDC does not provide an exception for gas stations with extraordinary safety measures, " and that the UDC was intended to "prevent further incursions" into WRPAs by gasoline retailers. (*Id.* at ¶ 26.) On January 10, 2005, the Superior Court affirmed the Board's denial of the variance. (*Id.*)

## III.   STANDARD OF REVIEW

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). In this case, the parties have stipulated to the material facts, so the disposition depends upon which party, based on the undisputed facts, must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).

## IV.   DISCUSSION

### A.   Rational Basis Review Under the Equal Protection Clause

The Equal Protection Clause provides that: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Clause essentially requires that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). But

governments are allowed to make many classifications, and "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* This rational basis review under the Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Rather, a statute will survive rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Finally, plaintiffs challenging a statute under rational basis review must bear the burden of negating "every conceivable basis which might support it." *Id.* at 315.

Wawa argues that Division 40.10.600 violates the Equal Protection Clause because the provision bars Wawa from building USTs inside the WRPAs while allowing existing UST owners to continue to operate. By allowing nonconforming uses to continue, the ordinance treats existing UST owners differently from those owning land within the WRPAs who wish to build new USTs. Division 40.10.600 effectively grandfathers the existing uses for an indeterminate period. Because it does not involve fundamental rights or make a suspect classification, Division 40.10.600 can violate the Equal Protection Clause only if it fails to pass rational basis review. The parties agree that the County sought to further a legitimate governmental purpose—the protection of water resources—in adopting Division 40.10.600. Thus, in order to prevail, Wawa must

show that the ordinance, including the grandfathering of existing USTs, is not rationally

related to the County's legitimate purpose.  Wawa has failed to carry that burden, and I

therefore conclude that the County prevails as a matter of law.

B.     Grandfathering Existing USTs is Rationally Related to the County's
       Legitimate Purpose

Wawa first argues that, given the County's avowed purpose of protecting the

safety of the water supply, allowing anyone to continue to operate USTs within a WRPA

is irrational.  The County enacted Division 40.10.600 to reduce the risk petroleum

release into the water supply.  The existing USTs present some risk of petroleum

release, and because the existing USTs are older than any new USTs, this risk may

even be greater on a per tank basis.  So, according to Wawa, creating a classification

system where existing USTs are allowed to remain, while new USTs are banned, is not

rationally related to the County's purpose.  This argument misunderstands the

requirements of rational basis review.

Essentially, Wawa argues that if the County bans any USTs, then it must ban all

USTs.  But the County is not so constrained.  Rational basis review "gives government

decisionmakers wide latitude when creating policy exemptions to an existing law."

*Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995) (citing *Nordlinger v. Hahn*,

505 U.S. 1, 17 (1992)).  Also, grandfathering of existing uses often passes rational

basis review, because it protects the reliance interests of property owners whose uses

were legal when the government acted.  *See City of New Orleans v. Dukes*, 427 U.S.

297, 304-05 (1976); *Haves*, 52 F.3d at 922.  Here, the County pursued one legitimate

purpose—protecting the County's water resources and ensuring a safe supply of public

water for the health and safety of the community—while also protecting the reliance

interests of property owners by allowing them to continue uses that were legal when

Division 40.10.600 was enacted.  Wawa argues that the grandfathering completely

defeats the water-protection purpose and that any reliance interests must be ignored.

But the County is not required to ignore those reliance interests.  Moreover, Wawa

cannot deny that, because each additional UST presents an incremental additional risk

of harm to the water supply, Division 40.10.600 as written does, in fact, reduce the risk

of petroleum leaks by preventing additional USTs from being installed.  Thus, the

County has acted rationally to reduce the danger to the water supply, even if it has not

immediately eliminated every danger.

In making its argument that grandfathering existing USTs is not rationally related

to the purpose of protecting the water supply, Wawa depends on several cases that

have held that banning new gas stations or storage tanks, while allowing existing ones

to continue to operate, violates the Equal Protection Clause.  *Standard Oil Co. v. City of*

*Charlottesville*, 42 F.2d 88 (4th Cir. 1930); *Standard Oil Co. v. City of Gadsden*, 263 F.

Supp. 502 (N.D. Ala. 1967); *Boothby v. City of Westbrook*, 23 A.2d 316 (Me. 1941); *In*

*re Martin*, 504 P.2d 14 (Nev. 1972); *Consumers Gasoline Stations v. City of Pulaski*,

292 S.W.2d 735 (Tenn. 1956); *City of Juneau v. Badger Coop. Oil Co.*, 279 N.W. 666

(Wis. 1938).  While these cases present some surface similarities with the instant case,

I am not persuaded by their reasoning.

First and most importantly, not one of these cases expressly carries out the

analysis of rational basis review as set out by the Supreme Court, including the required

deference to governmental action.  Instead, Wawa depends on flatly stated conclusions

9

from those cases that treating new tanks differently from existing ones was an equal protection violation. For example, in *Standard Oil Co. v. City of Charlottesville*, the court simply asserted that "[i]t cannot be said" that the classification could be related to the purpose of protecting public safety when it allowed existing uses to continue. 42 F.2d at 93. Whether or not the facts showed an equal protection violation in those cases, there is little persuasive value in conclusions alone, especially when they are found in cases reaching back decades to a time preceding authorities that address modern zoning practices.

Second, in some of these cases, the courts appear to be convinced that the classification was a pretext to prevent a particular property owner from starting a business. *See id.* at 89-90 (describing the special meeting where the ordinance was passed in response to protests over a particular gas station); *Boothby*, 23 A.2d at 318 ("[T]he record leaves no doubt that the real purpose of the regulation was to prevent the erection and maintenance of the filling station [at issue in the case]."). Here, there is no suggestion of such a government contrivance.

Finally, some of the cases expressly state that an ordinance passed pursuant to the government's zoning power should be treated differently. *Standard Oil Co. v. City of Charlottesville*, 42 F.2d at 90; *Standard Oil Co. v. City of Gadsden*, 263 F. Supp. at 507; *Boothby*, 23 A.2d at 320; *Consumers Gasoline Stations*, 292 S.W.2d at 737. While Wawa claims that Division 40.10.600 addresses public safety and so is not a simple zoning ordinance, it is clear that the County acted pursuant to its zoning authority.

Thus, Wawa has failed to show that, on its face, grandfathering existing USTs is not rationally related to a legitimate County purpose.

C.       Allowing DNREC Upgrades Does Not Defeat the County's Purpose

Wawa next argues that Division 40.10.600.B, the provision allowing existing USTs to be replaced if required by the DNREC, irrationally increases the risk of petroleum leaks by giving operators of existing USTs an incentive to operate beyond the safe, useful life of their systems.  Even if this incentive exists, this argument fails to carry Wawa's burden under rational basis review.

The County allows nonconforming uses under the UDC pursuant to Delaware statute.  9 *Del. Code* § 2610.  As already noted, allowing such uses protects the reliance interests of property owners whose uses were legal before the ordinance was in place.  But that protection need not last forever.  The UDC provides that nonconforming use status ends when the use is discontinued for six months, 40 UDC Division 40.8.120, or the building or structure is destroyed in excess of fifty percent of its market value, 40 UDC Division 40.8.130.  The UDC also prohibits the extension or enlargement of nonconforming uses.  40 UDC Division 40.8.130.  Thus, the County can and does limit nonconforming uses.

While the UDC allows existing USTs to remain as nonconforming uses, the County did not intend for those USTs to be outside the requirements set by DNREC. On the contrary, DNREC may require universal UST upgrades to maintain their safety. For example, in 1998, USTs were required to meet certain corrosion protection requirements.  (D.I. 25, ¶ 10.)  The County intended such upgrade requirements to apply to existing USTs being operated as nonconforming uses.  Thus, Division

11

40.10.600.B allows USTs inside WRPAs to be replaced, but only if the replacement is required by DNREC. Otherwise, the nonconforming use will terminate when USTs reach the end of their useful life, because the USTs will not be allowed to be replaced.

Wawa argues that this interaction between the grandfathering of existing USTs and the allowance of DNREC-required upgrades creates a moral hazard for the owners of existing USTs. Wawa reasons that nonconforming uses are more valuable because of the ban on new USTs within WRPAs, and that UST owners are therefore motivated to find a way to make their nonconforming uses effectively permanent. The only way that USTs within WRPAs may be replaced is when DNREC requires replacement. Since a UST owner will not be able to depend on DNREC issuing a general requirement for UST upgrades, the owner will instead take advantage of DNREC's power to order replacement when there is a petroleum leak from the owner's tank. *See* Code of Delaware Regulations 70 100 105, Part B, § 4.01 D(2). Thus, in Wawa's scenario, an owner will actually keep an old UST in place beyond its useful life, so that, when it leaks, DNREC will order replacement and the nonconforming use can continue. According to Wawa, this possibility defeats the purpose of Division 40.10.600, because it increases the risk of leaks. Wawa contends that this is sufficient to make the ordinance unconstitutional.

But proposing a scenario where a party may manipulate a regulatory system to avoid safety requirements is not enough to make the system irrational under the equal protection clause. The County is not required to make an ordinance foolproof in order to pass rational basis review. Requiring such an airtight ordinance would amount to judging "the wisdom, fairness, or logic of legislative choices," in violation of the

12

principles of rational basis review. *Beach Communications*, 508 U.S. at 313. Rather, to successfully attack a legislative classification, the plaintiff must "negative every conceivable basis which might support it." *Id.* at 315. The County allows replacement of existing USTs in recognition of DNREC's power to order upgrades. Wawa's proposed "loophole" does not make the County ordinance irrational. In any case, the scenario is not as likely as Wawa contends, given that, to take advantage of the "loophole," a UST owner must allow a leak and thus risk significant legal penalties. It is entirely rational for the County to have concluded that an owner is more likely to avoid such risk by phasing out the nonconforming use.[2]

Thus, Wawa has failed to show that allowing DNREC-required upgrades to existing USTs is less than rationally related to a legitimate County purpose.

## V.   CONCLUSION

Accordingly, I will grant the County's motion for summary judgment, and deny Wawa's motion for summary judgment. An appropriate order will issue.

---

[2]Wawa also argues that allowing DNREC-ordered replacement effectively makes the nonconforming uses permanent, and that this requires heightened rational basis scrutiny according to the Third Circuit. *Delaware River Basin Comm'n v. Bucks County Water & Sewer Auth.*, 641 F.2d 1087 (3d Cir. 1981). Because this argument depends on a scenario where property owners risk considerable liability and hope for DNREC-ordered upgrades to actually leaking systems, Wawa has not shown that there is an appreciable danger of permanent grandfathering.